**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BRYN MAWR CARE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**KATHLEEN SEBELIUS, in her Official Capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and ARTHUR F. KOHRMAN, M.D., in his Official Capacity as DIRECTOR OF THE ILLINOIS DEPARTMENT OF PUBLIC HEALTH,**<br><br>**Defendants.** | **Case No. 11 C 734**<br><br>**Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated, the Court grants Defendant Kathleen Sebelius' Motion for Summary Judgment and grants Defendant Arthur F. Kohrman, M.D.'s Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Bryn Mawr Care ("Plaintiff") operates a nursing home in Chicago. On April 2, 2010, the Illinois Department of Public Health (the "IDPH") surveyed the facility and gave Plaintiff written notice that it did not comply with certain federal regulations. Plaintiff denies that it was ever out of compliance with the federal regulations. On April 8, 2010, the IDPH provided Plaintiff a notice stating that due to the noncompliance of the

April 2 survey, it had proposed certain remedies. In the same notice, the IDPH also stated that Plaintiff had an opportunity to correct the deficiencies prior to the imposition of any such remedies. On April 18, 2010 Plaintiff requested that the Michigan Peer Review Organization (the "MPRO") perform an informal dispute resolution of the matter. The MPRO granted Plaintiff's request and Plaintiff participated in the informal dispute resolution process. On May 8, 2010, the MPRO made its final determination regarding Plaintiff's request and declined to modify the IDPH's April 2 deficiencies survey.

On May 18, 2010, the IDPH conducted a revisit survey and found that Plaintiff had cured all of the April 2 deficiencies and had returned to substantial compliance. On May 26, 2010, the IDPH informed Plaintiff it would not impose any remedies on Plaintiff for the April 2 deficiencies.

The initial April 2 survey results, however, were available on the Centers for Medicare and Medicaid Services ("CMS") website and subsequently were disseminated to other commercial websites. As a result, on July 1, 2010, Plaintiff requested a hearing before CMS to challenge the findings of the survey. An Administrative Law Judge ("ALJ") dismissed the case, concluding Plaintiff did not have a right to a federal hearing to challenge the survey findings.

In July 2010, after reviewing the April 2 survey, CMS mistakenly calculated Plaintiff's star rating (a rating system CMS

uses to rate facilities for the purposes of providing the public a comparison of nursing homes and to encourage compliance amongst facilities), to be two out of five stars when it should have been four out of five stars. CMS published this rating on its website. CMS failed to correct the rating until February 16, 2012.

On August 11, 2010, Plaintiff submitted a request to the IDPH to challenge the April 2 findings. An ALJ again dismissed Plaintiff's request, finding that Plaintiff did not have the right to a hearing because CMS did not impose any remedies on Plaintiff or impose any other adverse action.

Plaintiff filed a two-count Complaint in this Court for a declaratory judgment and injunctive relief. Count One alleges that Defendant Kathleen Sebelius, in her official capacity as the U.S. Secretary of Health and Human Services, violated Plaintiff's procedural due process rights under the Fifth Amendment. Count Two alleges that Defendant Arthur F. Kohrman, M.D. violated Plaintiff's procedural due process rights under the Fourteenth Amendment. (Dr. Kohrman is currently the Acting Director of the IDPH and has been substituted in place of the original named Defendant, Damon T. Arnold, M.D., pursuant to Federal Rule of Civil Procedure 25(d).) Both Defendant Sebelius and Defendant Kohrman moved for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. A dispute is material if it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party satisfies its burden, the non-movant must present facts to show a genuine dispute exists to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The Court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009).

If a party asserts that a fact cannot be, or is genuinely disputed, it must support that assertion with citations to materials in the record. FED. R. CIV. P. 56(c)(1). Such cited materials must be served and filed. Local Rule 56.1. A court need only consider cited materials, but it is within the court's discretion to consider the entire record. FED. R. CIV. P. 56(c)(3). If a party fails to support an assertion, the court may consider the fact undisputed, and grant summary judgment if the record supports it, or issue any other appropriate order. FED. R. CIV. P. 56(e).

## III. DISCUSSION

Defendant Sebelius ("Sebelius") claims summary judgment is appropriate because Plaintiff's claim is meritless because reputational harm does not require due process protection. Sebelius alternatively argues that summary judgment should be granted because Plaintiff received adequate due process through an informal dispute resolution. Finally, Sebelius contends because Plaintiff is a Medicaid-only facility, it was not entitled to a hearing at the federal level to challenge the findings of noncompliance.

Plaintiff responds that the harm suffered to its reputation is distinguishable from the precedent cited by Sebelius because, in this case, the allegations published and disseminated were never admitted and were never subject to a judicial challenge. In fact, Plaintiff denies it was ever out of substantial compliance on April 2. However, because Plaintiff fails to support its alleged compliance on April 2 with anything in the record, pursuant to Local Rule 56.1, this Court will deem such fact undisputed.

Defendant Kohrman ("Kohrman"), like Sebelius, claims summary judgment should be granted because Plaintiff has not been deprived of a liberty or property interest sufficient to trigger procedural due process rights under the Fourteenth Amendment. Kohrman also argues that pursuant 42 C.F.R. § 431.151 the IDPH was not authorized nor required to provide Plaintiff with a hearing.

Plaintiff responds to Kohrman in the same manner that Plaintiff responds to Sebelius; first arguing that Plaintiff does have a protectable property interest, and then arguing that pursuant to 42 C.F.R. § 431.151(a)(1)(ii) the IDPH should have provided Plaintiff with a hearing.

**A. Sebelius' Motion for Summary Judgment**

***1. Fifth Amendment Procedural Due Process Requires a Protectable Liberty or Property Interest***

Procedural due process claims require a two-step analysis. First, the Court must determine if the plaintiff was deprived of a protected liberty or property interest. Assuming such an interest exists, the Court then must determine what process is due. *See Pugel v. Bd. Of Trs. Of Univ. of Illinois*, 378 F.3d 659, 662 (7th Cir. 2004). In determining the specific due process requirements the Supreme Court advises courts to consider three factors.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). It is with this framework that the Court examines Plaintiff's claim that it was deprived of a protected property or liberty interest.

Plaintiff claims it has "a constitutionally protected property interest . . . in maintaining its reputation." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 8.

In order to demonstrate a procedural due process violation of a property right, a party must show that there is "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Hudson v. City of Chi.*, 374 F.3d 554, 559 (7th Cir. 2004). A property interest protected by the Fifth or Fourteenth Amendment consists of more than a mere unilateral expectation of the claimed interest. Instead, a party must "have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). This entitlement must be established by statutes or regulations that delimit the scope and the condition of the right. *Id.*

In the instant case, Plaintiff fails to prove that it has a valid property interest sufficient to trigger due process protections. Plaintiff claims that it has a property interest in maintaining its reputation as a reputable nursing home and the CMS mistaken rating of two out of five stars has caused Plaintiff to lose potential patients. While it is true that this mistaken rating could have caused some potential patients to look elsewhere for their care, this does not amount to a property interest in which Plaintiff can claim it is legally entitled. To hold otherwise, would obviate the concept of the rating system and in

theory would allow any facility to possess property rights in their current CMS rating.

Moreover, both the Supreme Court and the Seventh Circuit have held that harm to a party's reputation is insufficient to trigger due process protections. *See Paul v. Davis*, 424 U.S. 693 (1976). In *Paul*, the Court held that police distribution of a flyer titled "Active Shoplifters" including an individual's name and photograph did not constitute a sufficient liberty or property interest protected by the Due Process Clause despite the fact that distribution of a flyer may have harmed the individual plaintiff's reputation. *Id.* at 701-02. Referencing *Paul*, the Seventh Circuit in *Abcarian v. McDonald*, held that a physician did not have a procedural due process claim against a state actor for reporting the settlement of a malpractice case to the National Practitioner Data Bank because "defamation alone, even by a state actor, does not violate the Due Process Clause . . ." *Abcarian v. McDonald,* 617 F.3d 931, 941 (7th Cir. 2010). Instead, the Seventh Circuit held that in order for a party to allege a procedural due process claim, the party must allege that "(1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." *Abcarian*, 617 F.3d at 941 citing *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th

Cir. 2001). This standard, now commonly referred to as the "stigma-plus" test, applies both to individuals and corporations. *See, e.g.*, *Medley v. City of Milwaukee*, 969 F.2d 312, 318 (7th Cir. 1992) (finding that plaintiffs did not have a liberty interest sufficient to trigger a procedural due process claim because the disciplinary actions "did not 'effectively put [them] out of business.'") Stated differently, in order for a plaintiff corporation to satisfy the stigma-plus standard, the plaintiff must show that its alleged reputational harm entirely destroyed its property right. If the plaintiff's alleged stigmatization falls short of this, then the plaintiff has no property or liberty interest sufficient to trigger the Due Process Clause. *See Chicago United Industries, Ltd. v. City of Chicago*, No. 05 C 5011, 2007 WL 4277431 *7 (N.D. Ill. Dec. 3, 2007) (granting a defendant's summary judgment motion on a plaintiff's procedural due process claim because plaintiff could not establish that it had been entirely excluded from its field as a result of defendant's actions and could not establish that its economic activity had been interrupted for a significant period of time.)

Plaintiff argues that it can satisfy the stigma-plus standard because its reputation has been harmed and its legal status has been altered. Plaintiff, however, has not adequately established a change in legal status as is required by the "stigma-plus" test. Plaintiff argues that the CMS five-star rating system includes a

"qualitative assessment and comparative analysis," and this type of dissemination of information is unique from the harm alleged in Defendant's cited precedent, and therefore illustrates how Plaintiff's legal status has been altered. *See* Pl.'s Resp. to Def.'s Mtn. for Summ. J. at 6. However, Plaintiff fails to articulate how this makes its case unique and fails to support this argument with any authority. Thus, this Court will not consider such an argument in making its summary judgment determination. *See United States v. Olmeda-Garcia*, 613 F.3d 721, 723-24 (7th Cir. 2010) (stating that arguments which are perfunctory, undeveloped, or unsupported by authority are waived and a district judge is not compelled to respond to such arguments).

Plaintiff further argues that its legal status has been changed because the CMS five-star rating system seeks to affect future behavior. However, this alone is insufficient to rise to the level of a change in legal status as required by the Seventh Circuit.

Plaintiff alternatively argues that the Seventh Circuit has recognized a constitutionally protected property interest in a facility maintaining its reputation. Plaintiff's support for such a proposition, however, is misplaced. Plaintiff cites *Somerset v. Turnock*, 900 F.2d 1012, 1014 (7th Cir. 1990) and *Cameo Convalescent*

*Center, Inc. v. Senn*, 738 F.2d 836 (7th Cir. 1984), but both cases are readily distinguishable from the one at bar.

In *Cameo*, the Seventh Circuit affirmed a district court's determination that a nursing home had a procedural due process claim where a licensed nursing home sued officers of the Wisconsin Department of Health and Human Services after the officers placed the nursing home on a Suspension of Referrals list without providing the nursing home a hearing. *Cameo*, 738 F.2d at 839. Unlike the present case, in *Cameo*, Wisconsin state law required defendants to provide agencies a hearing prior to being placed on such a list and the effect of being placed on such a list precluded social service agencies from referring nursing home patients to facilities named on the list. *Id.* at 840. The Seventh Circuit held that the nursing home established a procedural due process claim because it proved it suffered not only an injury to its reputation, but also suffered a change in its legal status, namely its inability to receive referral patients.

The instant case is distinguishable from *Cameo* in that Plaintiff did not suffer an alteration in its legal status. Even if this Court assumes Plaintiff's reputation was harmed due to the publication and dissemination of the mistaken two out of five star rating, this rating, without more does not have the effect of changing Plaintiff's legal status. While Plaintiff states that the

CMS rating publication likely had the effect of reducing the number of referrals and potentially caused Plaintiff to have an increased risk to its licensure, these changes are not analogous to the tangible loss of referrals in *Cameo* and do not amount to a change in Plaintiff's legal status. Moreover, unlike *Cameo* where Wisconsin state law required a hearing prior to placing it on the Suspension of Referrals list, here the federal regulation requires that the IDPH provide a hearing only if the IDPH imposes remedies on a facility. Such remedies are specifically outlined in 42 C.F.R. § 488.406, and the publishing of information about a deficiency finding is not included on the list. *See* 42 C.F.R. § 488.406. Thus, Plaintiff's reliance on *Cameo* is misplaced.

Plaintiff also relies on *Somerset v. Turnock*, 900 F.2d 1012, 1014 (7th Cir. 1990). *Somerset*, like *Cameo*, is readily distinguishable from the instant case. In *Somerset*, a nursing home brought a § 1983 action to enjoin the Director and Associate of the Illinois Department of Public Health from implementing certain statutory remedies, arguing that the nursing home had been deprived of a property interest without due process of law as required by the Fourteenth Amendment. *Id.* at 1013. The district court found such a property interest to exist because defendants changed the nursing home's unconditional license to a conditional license and this change in licensure caused the facility to become ineligible

for funding, thereby altering the facility's legal status. *Id.* at 1014-15.

Similar to *Cameo*, *Somerset* differs from Plaintiff's case in that Plaintiff has not suffered a tangible change in legal status like the facility in *Somerset*. In *Somerset*, the Seventh Circuit specifically pointed out that the district court found that:

> [T]he imposition of the Conditional License alone caused only damage to reputation which would not rise to constitutional levels, . . . but the combination of the Conditional License with the loss of eligibility funding for QUIP was sufficient because the loss of eligibility of funding was a change in legal status.

*Id.* at 1015.

In the present case, Plaintiff has not even had an imposition of a conditional license let alone had a loss of funding as a result of the CMS two-star rating. Moreover, Plaintiff fails to establish any other loss which the Court could construe as a change in legal status.

Thus, the Court finds Plaintiff fails to establish a liberty or property interest sufficient to trigger the protections of the Due Process Clause of the Fifth Amendment.

***2. Informal Dispute Resolution Process***

The Court declines to address Sebelius' argument regarding the adequacy of the informal dispute resolution process because the Court has already determined that Plaintiff has not established a protectable property or liberty interest sufficient to trigger due

process. *See Dandan v. Ashcroft*, 339 F.3d 567, 575 (7th Cir. 2003) (stating that before a party is entitled to Fifth Amendment due process protections, a party must have a protected liberty or property interest at stake).

### ***3. Medicaid-Only Providers Are Not Entitled to an Appeal Hearing***

Notwithstanding the fact that this Court has already determined that Plaintiff has not established a liberty or property interest sufficient to trigger the due process protections under the Fifth Amendment, Sebelius also raises an argument that because Plaintiff is not a Medicare provider, Plaintiff was not entitled to an administrative appeal hearing. Plaintiff responds to this argument, first admitting that it is not a provider of Medicare, and then strangely by arguing that it was not required to exhaust administrative remedies. See Pl.'s Resp. to Defs.' Mot. for Summ. J. at 11.

The Court, confused as to the lack of Plaintiff's responsiveness, agrees with both Sebelius and the Administrative Record of the Department of Health and Human Services Departmental Appeal Board. Sebelius correctly points out that pursuant to federal regulation 42 C.F.R. Part 498, Plaintiff is not a "provider" entitled to a hearing for the purposes of the regulation because Plaintiff is only a Medicaid and not a Medicare provider. *See* 42 C.F.R. § 498.2. Indeed, in its decision, the ALJ for

Plaintiff's appeal made that finding of fact and further noted that Plaintiff did not qualify for any of the exceptions to the general rule laid out in 42 C.F.R. §498.3(a)(2)(i).

When reviewing a decision from an administrative agency a district court's standard of review is deferential. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). Unless the court determines that there was an error of law, the court will uphold the findings of fact by the administrative law judge if such findings are supported by substantial evidence. *Griffith v. Callahan*, 138 F.3d 1150, 1152 (7th Cir. 1998). Substantial evidence means "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

In this case, the Court examined the ALJ's decision and finds that its determinations and findings of fact are supported by substantial evidence, namely the plain language of the federal regulations. As such, the Court finds that Plaintiff was not entitled to a hearing at the federal level to challenge the findings of noncompliance because Plaintiff is not a Medicare provider.

## B. Kohrman's Motion for Summary Judgment

### *1. Fourteenth Amendment Procedural Due Process Requires a Protectable Liberty or Property Interest*

The Court determines that Plaintiff does not have a valid property interest sufficient to trigger due process protections

pursuant to the Fourteenth Amendment for the same reasons stated above regarding Sebelius' Motion for Summary Judgment.

In his Motion for Summary Judgment, Kohrman adopts the same arguments as Sebelius insofar as Plaintiff fails to establish sufficient property or liberty interest to trigger due process. The only distinction between the two motions is that Sebelius argues that pursuant to the Fifth Amendment, Plaintiff's property interest is insufficient, while Kohrman, a state actor, argues the same pursuant to the Fourteenth Amendment. The Supreme Court has stated that the same standard applies to both federal actors and state actors through the Fifth Amendment and the Fourteenth Amendment respectively. *See Bowles v. Willingham*, 321 U.S. 503, 518 (1944) (noting that the Fifth Amendment and Fourteenth Amendment are typically construed in *pari materia*.) Therefore, the Court refrains from repeating its prior analysis, and finds that Plaintiff has not adequately established a property interest sufficient to trigger due process pursuant to the Fourteenth Amendment.

***2. 42 C.F.R. 431.151(a)(1)(ii)***

Kohrman next argues that pursuant to the Code of Federal Regulations, specifically, 42 C.F.R. § 431.151(a)(1)(ii), Plaintiff was not entitled to a federal hearing. Plaintiff responds by arguing exactly the opposite. The heart of the dispute lies in the

words "other alternative remedy," within 42 C.F.R. § 431.151(a)(1)(ii).

Kohrman recites the language of the regulation as proof that Plaintiff was not entitled to a hearing. Specifically, Kohrman notes that because the IDPH can only provide a hearing when a facility's provider agreement has been denied or terminated or if there is a dispute over a facility's effective date of enrollment in Medicaid, or if civil money penalties or alternative remedies have been imposed, Plaintiff was not entitled to a hearing. *See* 42 C.F.R. § 431.151 (a)(1)(ii). Plaintiff argues that the IDPH should have provided Plaintiff a hearing pursuant to the exact same federal regulation because Plaintiff considers the lowered star rating by the CMS to be "an other alternative remedy." Plaintiff directs the Court to the Administrative Record and the actual Medicare website to support the fact that the lowered CMS rating consists of a "remedy" pursuant to 42 C.F.R. § 431.151. However, the citation to the Administrative Record Plaintiff alleges supports its argument consists of the decision of the ALJ who determined that Plaintiff was not entitled to a hearing. Specifically, the ALJ's decision states, "IDPH found deficiencies, but it did not impose any remedies against Petitioner [Plaintiff]." *Bryn Mawr Care v. Centers for Medicare and Medicaid Services*, Decision No.CR2277 (Nov. 1. 2010) *http://www.hs.gov/dab/index.html.* The ALJ concluded that Plaintiff had not been "subject to

compliance actions as the result of a CMS validation survey or CMS review of State action, and the noncompliance findings appeal by Petitioner [Plaintiff] were not generated as part of a denial of an application by Petitioner [Plaintiff] to participate in Medicare as a skilled nursing facility." *Id.* at 3. These quotations appear on the specific pages Plaintiff directs the Court to support the argument that the CMS lowered rating is a remedy pursuant to the federal regulation.

The next citation Plaintiff directs the Court to in an attempt to argue that the lowered rating consists of a remedy is the Official U.S. Government Site for Medicare. However, this website merely displays Plaintiff's CMS rating. It does nothing to support the fact that the rating consists of a remedy pursuant to 42 C.F.R. § 431.151(a)(1)(ii). The Court also finds Plaintiff's response to Defendant's Local Rule 56.1 statements to be persuasive. In this response, Plaintiff admits that on May 26, 2010 the IDPH informed Plaintiff that no formal remedies would be imposed in connection with the April 2 survey. *See* Pl. Resp. to Def. Sebelius' Local Rule 56.1 Statement of Uncontested Facts at 2. Thus, taken together, the Court finds Plaintiff fails to establish that the lowered CMS rating consists of an "other alternative remedy" which entitles Plaintiff to a hearing.

The Court does recognize that it is unfortunate that CMS mistakenly lowered Plaintiff's rating and that it took CMS nearly

two years to correct its mistake. However, the Court does not find that these mistakes consist of remedies pursuant to the federal regulation which entitles Plaintiff to a hearing and does not find that Plaintiff has adequately established a protectable liberty or property interest sufficient to trigger due process protections under the Fifth or Fourteenth Amendments.

## IV. CONCLUSION

For the reasons stated herein, the Court grants summary judgment to Defendant Sebelius on the Fifth Amendment Procedural Due Process Claim; and grants summary judgment to Defendant Kohrman on the Fourteenth Amendment Procedural Due Process Claim.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:** 9/26/2012